UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

BERNARD A. FISH, SR.,

                    Petitioner,                    Case No. 2:18-cv-2

v.                                                 Honorable Gordon J. Quist

THOMAS WINN,

                    Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Bernard A. Fish, Sr., is incarcerated with the Michigan Department of Corrections at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Michigan. On October 3, 2014, following a five-day jury trial in the Baraga County Circuit Court, Petitioner was convicted of two counts of armed robbery, in violation of Mich. Comp. Laws § 750.529; two counts of extortion, Mich. Comp. Laws § 750.213; two counts of unlawful imprisonment, in violation of Mich. Comp. Laws § 750.349b; and one count of impersonating a police officer to commit a crime, in violation of Mich. Comp. Laws § 750.215. On October 20, 2014, the court sentenced Petitioner to concurrent prison terms of twenty to forty years for armed robbery, five to twenty years for extortion, five to fifteen years for unlawful imprisonment, and two to four years for impersonating a police officer to commit a crime.

On December 27, 2017, Petitioner filed his habeas corpus petition raising four grounds for relief, as follows:

I.    Sixth Amendment right, self-represent, using counsel as evidence of guilt, ineffective assistance of counsel.

II.    The prosecutor violated the defendant's due process by allowing and using perjured testimony knowingly.

III.   Sixth Amendment, due process/vouching for guilt/disclose evidence/confront witnesses/jury instructions/ Fourth Amendment right.

IV.   [I]rrelevant evidence/[denigrating] defense counsel/inaccurate transcripts/Sixth Amendment violated right to fair trial and due process.

(Pet., ECF No. 1, PageID.6-7, 9-10).  Respondent has filed an answer to the petition (ECF No. 12), stating that the grounds should be denied because they are meritless. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds lack merit.  Accordingly, I recommend that the petition be denied.

## Discussion

## I.    Factual allegations

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

Suspecting that an active marijuana grow operation existed at a house in Watton, Fish and his nephew, Donovan Waupoose, decided to rob the house of marijuana and cash.  Fish planned to conduct the robbery, and Waupoose planned to drive a truck and help load the marijuana.  When Fish approached the house, he encountered two men who had recently purchased the property.  These men were not actively growing marijuana, but instead, were repairing the existing structure and

2

planning to grow medicinal marijuana in the future.  Fish, brandishing a BB gun, told the victims that he was a United States Marshal and was raiding the house.  After Waupoose arrived in the truck, Fish gave his BB gun to Waupoose.  While Waupoose held the men with the BB gun, Fish searched the house.  Fish found no useable marijuana or cash.  He did, however, find a real handgun.  Fish used this handgun to threaten the victims.   He demanded that they contact a family member by telephone.  Fish told this family member that the victims were being held on $5,000 bond each, and demanded payment.  Shortly after ending this call, Fish marched the victims at gunpoint to a field.  Fish left the victims and fled with Waupoose in the truck.  The entire incident was captured on a multi-camera surveillance system.

Unsatisfied with the result of this robbery, Fish asked Waupoose to contact a friend and ask to purchase $15,000 worth of marijuana.  Fish had no such sum of money, and instead, planned on conducting another robbery.  Waupoose organized the meeting to take place at a bar in Long Lake, Wisconsin.  Fish met the victim in his car and forced him to travel to a remote area.  Fish stole the car, which contained several pounds of marijuana, and after driving away in the stolen car, called Waupoose.  Waupoose met Fish and picked him up, leaving the stolen car behind.

After the robberies, Fish fled to several states, leading federal authorities on a manhunt.  He was eventually captured, and when he was, told authorities that the robbery of the house in Watton was staged.  According to Fish, the victims, Fish, and the man he robbed in Wisconsin all planned to fake a robbery at the house.  The four planned to split the proceeds.  Fish testified to this version of events at trial.  The jury convicted Fish as charged.

(Mich. Ct. App. Op., ECF No. 13-20, PageID.1669-1670).  "The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016) (footnote omitted).  Petitioner does not challenge that other witnesses provided testimony consistent with the facts as set out by the appellate court.  Petitioner simply contends that those witnesses testified falsely and that the entire robbery was staged.

The jurors heard testimony from Petitioner's nephew and accomplice, Donovan Waupoose, and the two victims, Jim Jackson and Steven Heiser.  The testimony of Steven Heiser from the preliminary examination was read into the record because Heiser was unavailable at the time of trial.  The jurors saw the surveillance video of the robbery.  The jurors heard testimony from Justin Andrus, one of the victims of the Wisconsin robbery.  Finally, the jurors heard testimony from seven law enforcement officers regarding the investigation of the crime and the apprehension of Petitioner.

Petitioner put four witnesses on the stand.  He recalled to the stand two of the law enforcement officers and called a third officer for the first time.  Then, Petitioner took the stand and explained to the jury that the entire robbery was staged.

The jurors apparently did not find Fish's version of the events credible.  They deliberated for about three hours before finding him guilty of all charges.

Petitioner appealed his convictions and sentences.  Petitioner raised three issues in the appeal brief that he filed with the assistance of counsel.  (Pet'r's Appeal Br., ECF No. 13-20, PageID.1737-1738).

Petitioner raised several more in a *pro per* brief.[1]  (Pet'r's Pro Per Appeal Br., ECF No. 13-20, PageID.1967-1968).  Because the *pro per* issues included ineffective assistance of counsel claims, Petitioner also filed a motion to remand to the trial court so that he could develop, by way of an evidentiary hearing, the record regarding his ineffective assistance claims.  (Pet'r's Second Mot. to Remand, ECF No. 13-20, PageID.1851-1953).  The court of appeals denied the motion to remand by order entered March 10, 2016.  (Mich. Ct. App. Order, ECF No. 13-20, PageID.1954).  By unpublished opinion issued April 19, 2016, the Michigan Court of Appeals affirmed the trial court on all issues except one.  (Mich. Ct. App. Op., ECF No. 13-20, PageID.1669-1677).

Petitioner obtained relief on one of the issues from his *pro per* brief.  Petitioner had challenged his sentences because they were based on "judge-found" facts in violation of the Sixth Amendment.  The court of appeals acknowledged that, under the mandatory sentencing guidelines in place at the time of Petitioner's sentence, his sentences were vulnerable to Sixth Amendment challenge.  (Mich. Ct. App. Op., ECF No. 13-20, PageID.1676-1677).  Subsequent to Petitioner's sentencing hearing, however, the Michigan Supreme Court had corrected the Sixth Amendment problem by making the guidelines discretionary.  *People v. Lockridge*, 870 N.W.2d 502 (2015).

---

[1] The issues Petitioner raises in his petition are issues taken from his *pro per* brief. Nonetheless, Petitioner's statement of those issues is not exactly the same here as it was in the court of appeals.

The court of appeals remanded to permit the trial judge to determine whether he would have imposed the same sentences under the new discretionary guidelines. (Mich. Ct. App. Op., ECF No. 13-20, PageID.1677).

The trial court promptly addressed the remand order, concluding that it "would not have imposed sentences different than those previously imposed upon Defendant, but for the constitutional constraint identified in [*Lockridge*]." (Baraga Cty. Cir. Ct. Order, ECF No. 13-21, PageID.2236). Accordingly, the court declined to resentence Petitioner.

As the sentencing issue proceeded on remand, Petitioner filed a *pro per* application for leave to appeal in the Michigan Supreme Court. (Pet'r's Appl. for Leave to Appeal, ECF No. 13-22, PageID.2252-2370). Petitioner raised the remaining issues from his *pro per* court of appeals brief, the three issues raised in the brief he filed with the assistance of counsel, and seven new issues. By order entered December 28, 2016, the Michigan Supreme Court denied leave to appeal. (Mich. Order, ECF No. 13-22, PageID.2251).

Petitioner did not file a petition for certiorari in the United States Supreme Court. (Pet., ECF No. 1, PageID.3). Instead, he timely filed his petition in the Court.

## II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person

who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

8

## III.    Self-representation

Petitioner challenges the trial court's denial of Petitioner's request to represent himself:

> On September 29, 2014, jury trial began.  Defendant made a motion to discharge his attorney . . . and self-represent.  (TT I 261-262, 259)  Defendant had graduated high school and had two years of college.  (TT I 261)  He was psychologically, physically, and emotionally sound.  (TT I 261-62).  He said, "well, I'm not totally uneducated with this deal."  (TT I 264).  The trial court merely took the motion under advisement.  On the second day of trial, September 30, 2014, the judge denied the motion to self-represent on grounds that trial had already begun with jury selection and that Defendant had no time to prepare a trial defense.

(Pet'r's Br., ECF No. 1-1, PageID.18).  The court of appeals gave Petitioner's challenge to the trial court's denial of his self-representation request short shrift.  This issue was one of the first seven issues Petitioner raised in his *pro per* appeal brief which the court of appeals addressed as follows: "We have carefully reviewed each of the issues raised by Fish, and conclude that the first seven are without merit."  (Mich. Ct. App. Op., ECF No. 13-20, PageID.1676).

The Sixth Amendment provides that a criminal defendant shall have the right to the assistance of counsel for his defense.  U.S. Const. amend. VI.  At issue here is a corollary to that right, the right to self-representation.  *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 279 (1942) ("The right to assistance of counsel and the correlative right to dispense with a lawyer's help are not legal formalisms.").  The clearly established federal law regarding self-representation is expressed in two

Supreme Court cases: *Faretta v. California*, 422 U.S. 806 (1975), and *Martinez v. Ct. of Appeal of Cal.*, 528 U.S. 152 (2000).

In *Faretta*, the Court found support for the right of self-representation in the structure of the Sixth Amendment right to the assistance of counsel:

> The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense.  It is the accused, not counsel, who must be 'informed of the nature and cause of the accusation,' who must be 'confronted with the witnesses against him,' and who must be accorded 'compulsory process for obtaining witnesses in his favor.' Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment.  The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.

> The counsel provision supplements this design.  It speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant.  The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally.  To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment.  In such a case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists.  It is true that when a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas. . . . This allocation can only be justified, however, by the defendant's consent, at the outset, to accept counsel as his representative.  An unwanted counsel 'represents' the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense.

*Faretta*, 422 U.S. at 819-821 (footnotes and citations omitted).

10

Although the Court recognized a criminal defendant's right to self-representation, it acknowledged that the right was a qualified one. The Constitutional mandate to provide counsel to a criminal defendant is premised upon the fact that "[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." *Id*. at 834. Because a criminal defendant representing himself relinquishes that benefit, his waiver must be "knowingly and intelligently" made. *Id*. at 835. Moreover, the right to self-representation must yield to "the dignity of the courtroom." *Id*. at 834 n.46. It is not a license to ignore the rules of procedure or engage in "obstructionist misconduct." *Id*.

In *Martinez*, 528 U.S. at 152, the Supreme Court concluded that the right of self-representation did not extend to appeals. In reaching its conclusion, the Supreme Court commented on the scope of the right of self-representation established in *Faretta*, stating:

> As the *Faretta* opinion recognized, the right to self-representation is not absolute. The defendant must " 'voluntarily and intelligently' " elect to conduct his own defense, and most courts require him to do so in a timely manner. He must first be "made aware of the dangers and disadvantages of self-representation." A trial judge may also terminate self-representation or appoint "standby counsel" – even over the defendant's objection – if necessary. We have further held that standby counsel may participate in the trial proceedings, even without the express consent of the defendant, as long as that participation does not "seriously undermin[e]" the "appearance before the jury" that the defendant is representing himself. Additionally, the trial judge is under no duty to provide personal instruction on courtroom procedure or to perform any legal "chores" for the defendant that counsel would normally carry out. Even at the trial level, therefore, the government's

11

interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer.

*Martinez*, 528 U.S. at 161-162 (citations and footnote omitted).

The trial court concluded that the morning of trial was simply too late to accommodate Petitioner's request to represent himself. (Trial Tr. II, ECF No. 13-13, PageID.845-849). Accordingly, the trial court denied Petitioner's requests. The trial court's consideration of the timeliness of Petitioner's requests and concern regarding the delay that would follow from granting them is in no way contrary to clearly established federal law. In *Hill v. Curtin*, 792 F.3d 670 (2015) (*en banc*), the Sixth Circuit explained:

> *Faretta* did not establish a bright-line rule for timeliness. Its holding does, however, necessarily incorporate a loose timing element. The *Faretta* Court explicitly stated that the defendant's request was "[w]ell before the date of trial," and "weeks before trial." It then held, "[i]n forcing Faretta, under these circumstances, to accept against his will a state-appointed public defender, the California courts deprived him of his constitutional right to conduct his own defense." Thus, to the extent that *Faretta* addresses timeliness, as a matter of clearly established law it can only be read to require a court to grant a self-representation request when the request occurs weeks before trial.
>
> Beyond this loose limit, the *Faretta* Court did not address timeliness . . . . Although lower courts have since established rules regarding when a defendant must assert his right, . . . the Supreme Court has never defined the precise contours of *Faretta*'s timing element. Nor did the Supreme Court announce any clearly established law on timeliness in *Martinez*. . . . Given the general standard articulated in *Faretta*, "a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."

*Hill*, 792 F.3d at 678-79 (citations omitted, emphasis in original).

The *Hill* court reasoned further that "[a] trial judge may fairly infer on the day of trial—as the jurors are on their way to the courtroom—that a defendant's last-minute decision to represent himself would cause delay, whether or not the defendant requests a continuance." *Hill*, 792 F.3d at 162; *see also Jones v. Bell*, 801 F.3d 556, 564-65 (6th Cir. 2015) ("'[A]s a matter of clearly established law[, *Faretta*] can only be read to require a court to grant a self-representation request when the request occurs *weeks before trial*'—not on the morning of trial.  The trial court's decision here was therefore not 'contrary to' *Faretta*'s holding, because Jones's request was made on the *first day* of trial, as opposed to weeks before trial.") (emphasis in original, citations omitted); *Walter v. Kelly*, 653 F. App'x 378, 386 (6th Cir. 2016) ("Courts have consistently held that requests made during or on the eve of trial are not timely."); *Floyd v. Haas*, No. 17-1295, 2017 WL 4182096, at *2 (6th Cir. Sept. 13, 2017) ("'[A] trial judge may fairly infer on the day of trial . . . that a defendant's last-minute decision to represent himself would cause delay,' and that such an inference is a reasonable basis on which to deny the request.") (citation omitted); *Hopson v. Gray*, No. 19-3709, 2019 WL 7757815, at *2 (6th Cir. Dec. 27, 2019) ("Hopson did not . . . indicate any desire to proceed pro se until [the trial] began . . . . 'A trial judge may fairly infer on the day of trial . . . that a defendant's last-minute decision to represent himself would cause delay.'") (citation omitted).

13

In light of the latitude afforded to state courts in determining the timeliness of a self-representation request, denial of such a request on the morning of trial is certainly not contrary to or an unreasonable application of clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief on his claim that the trial court should have permitted Petitioner to represent himself.

## IV.    Prosecutorial misconduct

Petitioner next contends that the prosecutor rendered his trial unfair by virtue of his misconduct in two respects:  first, he improperly bolstered and vouched for the testimony of Petitioner's accomplice, Donovan Waupoose, by repeated references to Waupoose's plea agreement, the benefits of which were dependent on Waupoose's truthful testimony; and, second, he elicited perjured testimony from Waupoose and other witnesses.  The court of appeals addressed the first of these arguments with some explanation:

> Fish contends that the prosecutor erred by eliciting the fact that Waupoose agreed to provide truthful testimony as part of his plea agreement.  Although a prosecutor may not vouch for the credibility of his witnesses by insinuating special knowledge of truthfulness, the mere reference to the fact that a witness has agreed to provide truthful testimony as part of a plea agreement is not error.

(Mich. Ct. App. Op., ECF No. 13-20, PageID.1675) (footnote omitted).  The second contention was one of Petitioner's first seven *pro per* arguments which were collectively rejected as meritless.  (*Id*., PageID.1676).

14

In order for a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental.  *See United States v. Young*, 470 U.S. 1, 11-12 (1985).  The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court.  *See id.* at 12-13; *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.' " *Slagle v. Bagley*, 457 F.3d

15

501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. 637, 645 (1974)).  Thus, in order

to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must

show that the state court's rejection of his prosecutorial misconduct claim " 'was so

lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement.' "   *Parker v.

Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington*, 562 U.S. at 103).

### A.    "Vouching" by reference to the plea agreement "truthfulness" requirement

Petitioner claims that the prosecutor improperly vouched for the credibility of

Donovan Waupoose when the prosecutor drew the jury's attention to the plea

agreement requirement that Waupoose's bargain depended on his truthful testimony.

The federal courts have generally recognized two types of objectionable vouching.  *See

United States v. Acosta*, 924 F.3d 288, 299 (6th Cir. 2019); *Johnson v. Bell*, 525 F.3d

466, 482 (6th Cir. 2008); *Brown v. McKee*, 231 F. App'x 469, 478 (6th Cir. 2007) (citing

*United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999)); *but see Wogenstahl v.

Mitchell*, 668 F.3d 307, 328-29 (6th Cir. 2012) (treating the two aspects of vouching

as part of a single standard).  The first type impermissibly places the government's

prestige behind the witness to bolster the witness' credibility.  *Francis*, 170 F.3d at

550; *United States v. Carroll*, 26 F.3d 1380, 1388-89 (6th Cir. 1994); *Drew v. Collins*,

964 F.2d 411, 419 (5th Cir. 1992).  In the second type of impermissible vouching, also

known as bolstering, the prosecutor invites the jury to believe that there is other

evidence, known to the prosecutor but not introduced into evidence, justifying the

16

prosecutor's belief in the defendant's guilt.  *See Francis*, 170 F.3d at 551; *United States v. Medlin*, 353 F.2d 789, 796 (6th Cir. 1965); *Henderson v. United States*, 218 F.2d 14, 19 (6th Cir. 1955).  Neither type of vouching is involved in this case.

The Sixth Circuit has explored whether and when a prosecutor's reference to the requirement to testify truthfully in a plea agreement might rise to the level of vouching.  Simply inquiring as to the existence of a term in the plea agreement regarding truthful testimony does not violate due process.  *See United States v. Reid*, 625 F.3d 977, 984 (6th Cir.2010) (concluding that "[b]ecause the prosecutor limited his questions and comments to th[e] facts [of the plea agreements] and did not imply any special knowledge regarding the credibility or truthfulness of the cooperating witnesses, the prosecutor did not improperly vouch for the witnesses."); *United States v. Presley*, 349 Fed. Appx. 22, 26-27 (6th Cir.2009) (finding no improper vouching where the prosecutor "simply mentioned the existence of the plea agreements" with the witness but "did not imply that these agreements ensured that they were being truthful."); *United States v. Trujillo*, 376 F.3d 593, 608-09 (6th Cir.2004) ("[T]he prosecutor did not offer any personal observations or opinions as to the veracity of [the witnesses], nor did she place the prestige of the Government behind their credibility.  Rather, the prosecutor's questions and comments merely encompassed the terms of [the witnesses'] plea agreements . . . ."); *United States v. Tocco*, 200 F.3d 401, 416-17 (6th Cir.2000) (introduction of plea agreement which contained requirement of truthful testimony, standing alone, was not improper); *Francis*, 170

F.3d at 550 ("We have allowed a prosecutor to refer to the plea agreement of a testifying witness. . . . The prosecutor may elicit testimony about its terms, attack the credibility of the witness because of it and even refer to the plea agreement of a government witness in an attempt to deflect defense counsel's use of the agreement to attack the witness's credibility.') (citation omitted).

It is certainly possible to stray beyond the permissible boundary of simply referencing the terms of the plea agreement. In *Carroll*, 26 F.3d at 1380, the court identified such a trespass:

> [T]he prosecutor blatantly implied that the Patrick's plea agreements ensured that the witnesses were truthful; the prosecutor did not give the jury any inkling that the government has no independent means of discerning truthfulness. Further, the prosecutor placed the prestige of the government, and even of the court, behind the credibility of the Patricks, by stating that, if the government or the judge did not believe that the witnesses were being truthful, the witnesses would be in jeopardy. This implied to the jury that the government and the court were satisfied that the witnesses were truthful. This constitutes improper vouching.

*Id.* at 1389. Petitioner's prosecutor did not make any such statements. Petitioner identifies five instances in the transcript where the prosecutor, during opening or closing arguments, made specific reference to Waupoose's plea bargain requirement of truthfulness. (Pet'r's Br., ECF No. 1-1, PageID.19). Viewed in context, however, these references are offered as one of several reasons the jurors should consider in evaluating the credibility of Waupoose. See, e.g., (Trial Tr. V, ECF No. 13-16, PageID.1449-1455). Indeed, the prosecutor specifically told the jury that Waupoose had "reasons to lie" as well. (*Id.*, PageID.1499).

18

Petitioner has failed to show that the prosecutor's references to the plea bargain "truthfulness" requirement are improper at all.  Therefore, Petitioner has failed to demonstrate that the state court's determination of his vouching claim is inconsistent with or contrary to clearly established federal law.  Moreover, Petitioner has failed to demonstrate that the state court's factual determinations supporting its conclusions are unreasonable on the record before it.  Accordingly, Petitioner is not entitled to habeas relief on his vouching claim.

### B.    Perjured testimony

The existence of perjured testimony in a trial, standing alone, is not a constitutional violation.  *Bower v. Curtis*, 118 F. App'x 901, 908 (6th Cir. 2004) ("Even if accepted, a post-trial recantation is generally not sufficient to grant habeas relief absent [an independent] constitutional error."); *Welsh v. Lafler*, 444 F. App'x 844, 850 (6th Cir. 2011) (same); *Kennedy v. Mackie*, 639 F. App'x 285, 292 (6th Cir. 2016) (same).  Perjured testimony may give rise to a constitutional claim where it is a "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.' "  *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)).  Such a use of perjured testimony amounts to prosecutorial misconduct.

To establish a prosecutorial misconduct claim based on the use of perjured testimony, Petitioner must show "(1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) (citations omitted).  *See also Coe v. Bell*, 161 F.3d 320 (6th Cir. 1998).  Petitioner bears the burden of demonstrating that the

testimony was actually perjured. *Lochmondy*, 890 F.2d at 822. "[M]ere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *Id.*

Petitioner's claim that the prosecutor knowingly used perjured testimony falls apart at the very first step. Petitioner offers two possible standards by which to determine that testimony was perjured. The first is the standard, specifically rejected in *Lochmondy*—that testimony at trial was inconsistent with other statements or testimony. The second, which fares no better—that testimony is inconsistent with Petitioner's testimony regarding the events. Petitioner has failed to meet his burden of demonstrating that the testimony he finds objectionable was perjured. Without that foundation, he has necessarily failed to show that the prosecutor knew that the testimony he elicited was false. Accordingly, Petitioner has failed to show that the court of appeals rejection of the "perjured testimony" claim as meritless is contrary to, or an unreasonable application of, clearly established federal law. Petitioner is not entitled to habeas relief on this claim.

## V.    **Petitioner's third habeas issue**

Petitioner's cryptic descriptions of his habeas issues make it difficult to discern exactly what he is arguing.[2] Petitioner's third habeas issue is presented as: "Sixth Amendment, due process/vouching for guilt/disclose evidence/confront witnesses/jury

---

[2] In his reply brief, Fish acknowledges the problem: "Fish admits this petition was disorganized and hard to discern the claims he tried to raise in his petition." (Pet'r's Reply Br., ECF No. 22, PageID.2535).

instructions/Fourth Amendment right." (Pet., ECF No. 1, PageID.9). The facts he offers in support are not particularly illuminating:

> The prosecutor failed to disclose a letter that was used at trial, never mentioned where or how it was obtained, defense counsel never asked. There were a total of 9 alleged victims only 1 showed up for trial, yet the[ir] parts in the case were still heard by the jury. The jury was told co-defendant was found guilty of the same crime Petitioner is charged with/he took a plea, not trial!

(*Id*.)

Petitioner's memorandum in support of the petition does not track the issues as Petitioner raised them in the petition. The memorandum does, however, include a section titled "confrontation rights/counsel failed to subpoena." (Pet'r's Memo., ECF No. 1-1, PageID.30-33). The memorandum also includes a section titled "Jury instructions." (*Id*., PageID.34). Thereafter, the memorandum seems to drift and ramble into topics referenced in Petitioner's fourth habeas issue and then back to the first habeas issue.

Some of these issues show up in Petitioner's reply brief. Petitioner's reply brief includes argument regarding the attorney/client privilege. Petitioner defended against the armed robbery charge by claiming the robbery was faked and the "victims" were in on it. In support of that claim, Petitioner argued that the video of the event showed Jackson changing the robbery plan as it was happening—it showed Jackson giving Petitioner instructions. In closing, the prosecutor challenged that assertion, he first "pointed his finger at Fish then Jackson as he made this statement[:] 'But that guy's is giving that guy orders? Are you kidding me? That is a take-charge guy, that's not a guy who takes orders from anybody, definit[e]ly not Jim

Jackson. . . . Big flaw in this fantastic story . . . Nobody tells Fish what to do.  His own lawyer doesn't tell him what to do!' "  (Pet'r's Reply Br., ECF No. 22, PageID.2504-2505).  Petitioner posits that this argument required him to put his lawyer on the stand to refute it and, thus, required violation of the attorney/client privilege.[3] Moreover, Petitioner contends that the prosecutor's argument relied on facts not in evidence and, therefore, violated his due process rights.  Petitioner also made reference to this argument in his application for leave to appeal under Issue III.

Petitioner's reply brief also references that there were multiple victims across the two criminal acts—the Michigan crime and the Wisconsin crime—but only one showed up to testify, Justin Andrus.  (*Id.*, PageID.2511-2513).  Petitioner also presents an argument that there were ten witnesses to the crimes, but only Andrus and Waupoose testified subject to cross-examination. (*Id.*, PageID.2554-2555).  In the reply brief, Petitioner also invites the Court to look to his application for leave to appeal in the Michigan Supreme Court.  Petitioner's application includes as Issue IV, an argument regarding confrontation rights.

---

[3] Petitioner raises another claim related to attorney/client privilege in his reply brief. He claims that Waupoose accessed Plaintiff's legal papers while they were both detained before trial and that Waupoose crafted his "confession" and testimony to conform to Petitioner's defenses.  The attorney/client privilege is not really the issue in that circumstance.  Construed liberally, the facts described by Petitioner might implicate a violation of his Sixth Amendment right to counsel.  *See e.g., Massiah v. United States*, 377 U.S. 201 (1964).  The claim falls short, however, because there is nothing in the record to suggest that Waupoose's alleged self-serving conduct might be attributable to the government.  *United States v. Henry*, 447 U.S. 264, 270-72 (1980).

Petitioner's reply brief contends that the prosecutor vouched for witness Robert Carter by commenting on Carter's ability to sniff out marijuana. (*Id*., PageID.2544). He complains also that the prosecutor bolstered Waupoose's testimony by suggesting the prosecutor had special knowledge of facts not before the jury. (*Id*., PageID.2545-2546).

The "letter" Petitioner references in his supporting facts (Pet., ECF No. 1, PageID.9) is a letter Petitioner wrote to Jackie Wesso. (Trial Tr. IV, ECF No. 13-15, PageID.1402-1404; Pet'r's Appl. for Leave to Appeal, ECF No. 13-22, PageID.2293-2294). Part of Petitioner's description of the events included his statement that there was a girl at the home where the robbery occurred—a girl who was missing. The prosecutor proposed that Petitioner fabricated that part of the story. He asked Petitioner if Petitioner had written letters to others seeking details about the missing girl, presumably to bolster that part of his description. Petitioner initially denied sending any such letter. The prosecutor impeached him with a letter that Petitioner eventually acknowledged he had written—a letter seeking details about the missing girl.

Finally, Petitioner's application for leave to appeal includes an issue, Issue V, regarding the accomplice jury instruction.

Considering Petitioner's arguments raised in all of his submissions, the Court concludes that Petitioner's habeas issue III raises the issues discussed below.

23

### A. The letter

Petitioner contends that the prosecutor should have produced the impeachment letter before trial.  In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.  "[T]here are three components of a true *Brady* violation:  [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

But the *Brady* rule "only applies to evidence that was known to the prosecution, but unknown to the defense, at the time of trial." *Apanovitch v. Houk*, 466 F.3d 460, 474 (6th Cir. 2006).  The government's failure to disclose potentially exculpatory evidence does not violate *Brady* "'where the defendant knew or should have known the essential facts that would permit him to take advantage of such information' or where the evidence is available from another source." *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (quoting *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988)).  "[W]here the alleged *Brady* evidence is available to the defense, there is really nothing for the government to disclose." *Bell v. Bell*, 512 F.3d 223, 235 (internal quotations omitted).

24

There can be no viable *Brady* claim for the prosecutor's failure to produce a letter that impeaches Petitioner because the letter is not exculpatory for Petitioner, either directly or by virtue of its impeachment of a witness against Petitioner. Moreover, there can be no viable *Brady* claim for the prosecutor's failure to produce a letter that Petitioner wrote. Petitioner was obviously aware of the letter he had written. Accordingly, Petitioner has failed to show that the state appellate court's rejection of his *Brady* claim was contrary to, or an unreasonable application of, clearly established federal law.

**B.     The accomplice jury instruction**

Petitioner complains that the trial court read the following accomplice jury instruction:

> Donovan Waupoose says he took part in the crime that the Defendant is charged with committing. Donovan Waupoose has already been convicted of charges arising out of the commission of that crime. The evidence clearly shows that Donovan Waupoose is guilty of the same crime that the Defendant is charged with. Donovan Waupoose has been promised that he will not be prosecuted for the crime the Defendant is charged with committing. Such a witness is called an accomplice.
>
> You should examine an accomplice's testimony closely and be very careful before accepting it. You may think about whether the accomplice's testimony is supported by other evidence, because then it may be more reliable. However, there is nothing wrong with the prosecutor's using an accomplice as a witness. You may convict the Defendant based only on an accomplice's testimony if you believe the testimony and it proves the Defendant's guilt beyond a reasonable doubt. When you decide whether you believe an accomplice, consider the following: Was the accomplice's testimony falsely slanted to make the Defendant seem guilty because of the accomplice's own interest, biases or for any other reason? Has the accomplice been promised that he will not be prosecuted, or promised a lighter sentence, or allowed to plead guilty to a less serious charge; if so, could this have influenced his testimony? Does the accomplice have a criminal record? In general, you should consider an accomplice's testimony more cautiously than you

would that of an ordinary witness.  You should be sure you have examined it closely before you base a conviction on it.

(Trial Tr. V, ECF No. 13-16, PageID.1514-1515).  Petitioner takes exception to the instruction because he contends that, by stating that the evidence clearly shows that Waupoose is guilty of the crime with which Petitioner is charged, the court necessarily implies that Petitioner is guilty as well.  Moreover, Petitioner claims that stating that Waupoose's guilt is clearly established by the evidence is inaccurate because his guilt was established by plea rather than trial.

Typically, a claim that a trial court gave an improper jury instruction is not cognizable on habeas review.  Instead, Petitioner must show that the erroneous instruction so infected the entire trial that the resulting conviction violates due process.  *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).  *See also Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (erroneous jury instructions may not serve as the basis for habeas relief unless they have so infused the trial with unfairness as to deny due process of law); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (same); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).  If Petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law.  *Id.*

Petitioner's argument regarding the accomplice instruction is unusual. Typically, habeas petitioners complain that they were denied due process because the trial court failed to read the accomplice instruction.  *See, e.g., Young v. Trombley*, 435 F. App'x 499, 502 (6th Cir. 2011).  On that side of the issue, the Sixth Circuit has concluded that "neither the United States Supreme Court nor this court 'has

26

require[ed] accomplice instructions as a general matter.' " *Young*, 435 F. App'x at 503 (quoting *Scott v. Mitchell*, 209 F.3d 854, 883 (6th Cir. 2000)).

Habeas petitioners typically desire the accomplice instruction because the instruction suggests that there is reason to question the motives of a testifying accomplice. It appears likely that Petitioner requested the instruction. The trial court notes that it was requested and it would not be likely that the prosecutor would request an instruction inviting skepticism regarding the testimony of his witness. (Trial Tr. V, ECF No. 13-16, PageID.1412-1414).

Petitioner's claim that the instruction overstates the determination of Waupoose's guilt because guilt was determined based on a plea rather than a trial is unsupportable. A determination of guilt by plea is no less significant than determination by trial. *See, e.g., Menna v. New York*, 423 U.S. 61, 62 (1975) ("[A] counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case.").

Petitioner's further claim that the instruction implies that he is guilty as well is not convincing. "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72. The court also instructed the jurors that they could not consider Waupoose's plea agreement for any purpose other than demonstrating his bias and self-interest. (Trial Tr. V, ECF No. 13-16, PageID.1516). Therefore, the jury was expressly instructed that they could not consider the Waupoose's guilty plea for the purpose Petitioner contends is so

27

damaging.  Accordingly, Petitioner has failed to show that the state court's rejection of his jury instruction challenge is contrary to, or an unreasonable application of clearly established federal law.  Thus, Petitioner is not entitled to habeas relief on that claim.

### C.    Confrontation Clause

Petitioner's claims that the trial violated his right to confront the witnesses against him in two ways.  First, he contends that there were several "victims" of his crimes, but he was convicted on the testimony of only Andrus and Jackson.  He was not provided an opportunity to confront the other "victims."  Second, Petitioner contends he was not able to confront victim Heiser because the trial court permitted the prosecutor to read Heiser's preliminary examination testimony into the record.

The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him."  U.S. Const., Am. VI; *Pointer v. Texas*, 380 U.S. 400, 403-05 (1965) (applying the guarantee to the states through the Fourteenth Amendment).  "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990).

### 1.    The other "victims"

Petitioner's contention that he was denied the opportunity to confront the other "victims" of his crimes because he could not cross-examine them is plainly wrong.  The Confrontation Clause is not implicated with respect to those victims—except Heiser— because they never "testified" at trial, either directly or through the introduction of

testimonial out-of-court statements, *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004). The clause applies only to witnesses: those who provide testimony. A criminal defendant has no right to confront a person who provides no evidence at trial. *See Cooper v. California*, 386 U.S. 58, 62 n.2 (1967) ("Petitioner also presents the contention here that he was unconstitutionally deprived of the right to confront the witnesses against him, because the State did not produce the informant to testify against him. This contention we consider absolutely devoid of merit."); *see also McCray v. Illinois*, 386 U.S. 300, 313-314 (1967) (same); *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992) ("The Sixth Amendment guarantees to a defendant the right to confront witnesses against him . . . [it] does not, however, require the government to call every witness competent to testify . . . ."); *United States v. Porter*, 764 F.2d 1, 9 (1st Cir. 1985) ("The confrontation clause does not come into play where a potential witness neither testifies nor provides evidence at trial."); *United States v. Morgan*, 757 F.2d 1074, 1076 (10th Cir. 1985) ("[T]he Confrontation Clause is not a guarantee that the prosecution will call all the witnesses it has against the defendant.").

### 2.    Victim Heiser

Steven Heiser provided testimony at trial, not live testimony, but through the reading of his testimony from the preliminary examination. Nonetheless, the interests the Confrontation Clause are designed to protect were preserved because the testimony was initially subjected to rigorous testing in the context of an adversary proceeding—Petitioner's counsel was able to cross-examine Heiser, face to face, at the preliminary examination. Indeed, Petitioner's counsel's cross-examination of Heiser

29

at the preliminary examination was probing.  (Prelim. Exam. Tr. I, ECF No. 13-1, PageID.216-256; Prelim. Exam. Tr. II, ECF No. 13-2, PageID.314-334).  The Supreme Court has clearly established that out-of-court testimonial statements may be admitted at a criminal trial where the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford*, 541 U.S. at 59. The trial court concluded that Heiser was unavailable to testify at Petitioner's trial and there can be no doubt that Petitioner had a prior opportunity for cross-examination.

The Sixth Circuit has noted that there exists "some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes." *Al-Timimi v. Jackson*, 379 F. App'x 435, 437-38 (6th Cir. 2010) (citing, *inter alia, Vasquez v. Jones*, 496 F.3d 564, 577 (6th Cir. 2007) (doubting whether "the opportunity to question a witness at a preliminary examination hearing satisfies the pre-Crawford understanding of the Confrontation Clause's guarantee of an opportunity for effective cross-examination") (internal quotation marks omitted)).  But the Supreme Court has never held that a defendant is denied his rights under the Confrontation Clause when a witness is unavailable at trial and the court admits the witness's preliminary examination testimony. *Id.*, 379 F. App'x at 438.  As a result, in the context of a federal court sitting on habeas review, the Sixth Circuit has concluded that a state court's determination that testimony from the preliminary examination was properly admitted was not an unreasonable application of clearly established Supreme Court precedent. *Id.*, 379 F. App'x at 438-40; *see also Williams v. Bauman*, 759 F.3d 630, 636 (6th Cir. 2014) (citing *Al-Timimi*

with approval and upholding on habeas review the admission of testimony from the petitioner's own preliminary examination).

Therefore, because Petitioner has failed to show that the state court's rejection of either of his distinct Confrontation Clause challenges are contrary to, or an unreasonable application of, clearly established federal law, he is not entitled to habeas relief.

### D.    Vouching for witness Carter

Sergeant Robert Carter was the first state trooper on the scene.  The prosecutor asked Carter whether he smelled marijuana in the home upon his arrival.  Carter said he did not.  The prosecutor then initiated the following exchange:

Q:    You've smelled fresh marijuana before?

A:    Yes. Yes.

Q:    Many times?

A:    Yes.

Q:    We've had many cases together where you've smelled fresh marijuana?

A:    Yes.

Q:    Sometimes I've been surprised at your ability to sniff it out. Um, did you smell anything like that there?

A:    Not at al[l].

(Trial Tr. III, ECF No. 13-14, PageID.1131).  Petitioner contends that the prosecutor thereby improperly bolstered or vouched for Sergeant Carter's marijuana-smelling acumen.

31

The prosecutor's comment that he has been surprised by Carter's ability to sniff out marijuana might cross the line that divides proper comment from improper vouching and bolstering.   But improper prosecutorial comments do not warrant habeas relief unless they "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Donelly*, 416 U.S. at 643.

The Sixth Circuit has identified factors a habeas court may consider when assessing whether prosecutorial misconduct warrants relief:  "(1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant." *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005).  It is not possible for Petitioner to demonstrate prejudice here.  Every witness who testified regarding the presence of marijuana in the house, except for Petitioner, testified that there was no "fresh" marijuana there.   The prosecutor's comment regarding Carter's ability, therefore, was entirely cumulative.  It was also isolated.

On the other hand, the evidence against Petitioner was overwhelming.  Every person present at the scene of the crime testified, and the video surveillance supported, that Petitioner took the actions necessary to commit the crimes—even Petitioner.  It was Petitioner's contention that the robbery was staged, not that it did not occur.  Petitioner simply ignores the fact that his staged robbery was intended to look like a real one and specifically intended to appear that way on the video surveillance system.

32

Moreover, to the extent the jurors even absorbed the prosecutor's comment regarding Carter's marijuana-sniffing skills, the court's charge to the jury cautioned that "[t]he lawyers' statements and argument are not evidence . . . [and t]he lawyers' question to the witnesses are also not evidence."  (Trial Tr. V, ECF No. 13-16, PageID.1497).  Jurors are presumed to follow their instructions.  *See, e.g., Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

For these reasons, Petitioner has failed to show that the state appellate court's rejection of the vouching claim was contrary to, or an unreasonable application of, clearly established federal law.  He is not entitled to habeas relief on this claim.

### E.    Petitioner does not do what he is told

Petitioner challenges the prosecutor's statement that Petitioner does not do what he is told, even when it is Petitioner's attorney giving the instruction.  Petitioner suggests that statement is objectionable for two reasons: first, it relies on facts not in evidence; and second, it would require placing Petitioner's counsel on the stand to refute it and, thus, destroy attorney/client privilege.  Petitioner's arguments find no support in the record.

Petitioner testified.  His counsel attempted to elicit Petitioner's testimony by way of posing questions for Petitioner to answer, but Petitioner preferred to simply offer the narrative he wished to offer when he wished to offer it, without regard to counsel's questions.  That is readily apparent from the transcript.  (*See* Trial Tr. IV, ECF No. 13-15, PageID.1353-1399).  Counsel was unable to control the direct examination of Petitioner; Petitioner controlled it.

A prosecutor is not limited to simply recounting the evidence during closing argument. He may also argue reasonable inferences from the evidence. *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000); *see also United States v. Young*, 470 U.S. at 8 n.5 (Court acknowledged as a useful guideline the American Bar Association Standard: "The prosecutor may argue all reasonable inferences from the evidence."). Even though a prosecutor may not denigrate the defense or defense counsel, a prosecutor is free to argue from the evidence that certain defense witnesses are lying. *See Hanna v. Price*, 245 F. App'x 538, 545-46 (6th Cir. 2007); *Bates v. Bell*, 457 F.3d 501, 525 (6th Cir. 2006). Nonetheless, it is unquestionably improper for a prosecutor to argue facts not in evidence. *Abela v. Martin*, 380 F.3d 915, 929 (6th Cir. 2004) (citing *Berger v. United States*, 295 U.S. 78 (1935)).

In Petitioner's case, however, the jury instructions specifically and properly directed the jurors to consider how a witness acts on the stand. (Trial Tr. V, ECF No. 13-16, PageID.1499). When the prosecutor invited the jurors to compare Petitioner's story that he was following the directions of Jackson with regard to the staged robbery, it was entirely proper comment on Petitioner's defense and the evidence at trial—specifically Petitioner's behavior on the stand—for the prosecutor to argue that Petitioner does not take direction from anyone, even his counsel. Accordingly, Petitioner has failed to show that the state appellate court's rejection of his claim is contrary to, or an unreasonable application of, clearly established federal law, and he is not entitled to habeas relief on this claim.

## VI.    Due process

Petitioner's fourth habeas issue is no less cryptic than his third: "irrelevant evidence/denigrating defense counsel/inaccurate transcripts/Sixth Amendment violated right to fair trial and due process." (Pet., ECF No. 1, PageID.10).  As supporting facts, Petitioner offers the following:

> Prosecutor told jury defense counsel was giving them a yarn story.  The transcripts have been manipulated.  The transcripts say nothing of the jurors' names or the fact they sent two notes out to ask about phone numbers.

(*Id.*)

### A. Transcripts

Petitioner objects to the transcripts for several reasons:

> [T]he trial transcripts [are] grossly inaccurate, . . . [the transcripts] were purposely manipulated to obscure appellate issues and judicial corruption in the backwoods known as Baraga County.  With no names or seat numbers, bias[ed] jurors cannot be identified, either.  Trooper Kochan's reading of Steven Heiser's Prelim. Exam. testimony is not even on the trial record to show verbatim what the jury heard or whether the reading was adulter[at]ed.  Two jury notes asking about phone number during deliberations are not transcribed.

(Pet'r's Pro Per Appeal Br., ECF No. 13-21, PageID.2082-2083).  In Petitioner's application for leave to appeal in the Michigan Supreme Court, Petitioner takes the arguments further, contending that the prosecutor manipulated the transcripts to omit unfavorable parts of the trial and add new elements to the transcript that did not occur at trial.  (Pet'r's Appl. for Leave to Appeal, ECF No. 13-22, PageID.2358-2359).  Petitioner repeats those arguments in the memorandum supporting his petition.  (Pet'r's Memo., ECF No. 1-1, PageID.34-36).

Petitioner complains that it is difficult to determine which of the jurors who spoke during *voir dire* were actually empaneled because the transcript simply refers to each juror as "prospective juror" rather than by seat number or name. Petitioner is correct regarding the transcribers generic reference to each prospective juror. For that reason, it is far more difficult to identify who said what during the *voir dire*— but it is not impossible. Petitioner's counsel often identified jurors by name when he questioned them. Based on the content of those exchanges, it is possible to link a name with a response. Moreover, when any juror made a statement that might evidence bias, the prosecutor, Petitioner's counsel, or the court followed up with questions to determine whether the juror could put aside the possible bias and decide the case on the evidence presented in court according to the judge's instructions. Petitioner fails to identify any juror, generically or specifically, who was not rehabilitated in that manner.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury. . . ." U.S. Const. amend. VI. The right to an impartial jury is applicable to the states via the Fourteenth Amendment. *See Turner v. Louisiana*, 379 U.S. 466, 471-72 (1965); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). Further, "due process alone has long demanded that, if a jury is to be provided the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment." *Morgan v. Illinois*, 504 U.S. 719, 727 (1992) (citations omitted). "The *voir dire* is designed " 'to protect [this] right by exposing possible biases, both known and unknown, on the part of potential jurors.' "

*Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir. 2003) (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984)).

When a juror's impartiality is called into question, the relevant issue is " 'did [the] juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality be believed.' " *Dennis*, 354 F.3d at 520 (quoting *Patton v. Yount*, 467 U.S. 1025, 1036 (1984)). The question of bias of an individual juror at a state criminal trial is one of fact. *Dennis,* 354 F.3d at 520 (citing *Patton,* 467 U.S. at 1036); *see also Sizemore v. Fletcher,* 921 F.2d 667, 672-73 (6th Cir. 1990) (citing *Smith*, 455 U.S. at 218). A state court decision based on a factual determination will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state court proceeding and not simply erroneous or incorrect. *Keith v. Mitchell,* 455 F.3d 662, 669 (6th Cir. 2006) (citing *Williams,* 529 U.S. at 409-11); *see also Young v. Hofbauer,* 52 F. App'x 234, 237 (6th Cir. 2002). The state court's factual determination is entitled to a presumption of correctness, which is rebuttable only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Michigan Court of Appeals rejected Petitioner's claim regarding the *voir dire* and juror bias as meritless. Petitioner fails to point to any juror statements indicating improper bias or that subsequent rehabilitative statements should be disregarded. He has failed to present any evidence, much less clear and convincing evidence, to overcome the presumption that the state court's factual determinations regarding juror bias are incorrect. Therefore Petitioner would not be entitled to relief on a juror bias claim.

Moreover, even if the *voir dire* transcript is deficient, absent some evidence of juror bias, Petitioner has failed to show prejudice.  For reasons of finality, comity, and federalism, habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.' "  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).  Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.' "  *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).  There must be more than a "reasonable possibility" that the error was harmful.  *Brecht*, 507 at 637 (internal quotation marks omitted).  The *Brecht* standard reflects the view that a "State is not to be put to th[e] arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the error."  *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (per curiam).  Petitioner's inability to specifically identify the juror by name or number is of no import because he cannot show that any of the unnamed prospective jurors demonstrated bias.

Petitioner references juror bias as a concern, but the true focus of his complaint that the jurors cannot be identified is the resulting inability to get confirming affidavits from jurors regarding the questions Petitioner claims the jurors posed to the trial court during their deliberations.  Petitioner claims that the jury sent out two questions, both relating to phone records, which Petitioner contends support his claim that the robbery was staged.  There is no record of those questions in the trial transcript.  The court of appeals rejected this claim as meritless.  That determination

38

is presumed correct.    Petitioner must present clear and convincing evidence to overcome that presumption.    Petitioner simply saying it was so is definitely not clear and convincing evidence.    Accordingly, Petitioner is not entitled to habeas relief on this claim.

Petitioner's claim that the prosecutor added items or deleted items from the transcript to improve his position on appeal suffers the same flaw.    The court of appeals rejected it as meritless.    That determination of fact is presumed correct.    The only evidence to the contrary is Petitioner's unsupported accusation.    Petitioners' accusation does not suffice as clear and convincing evidence to overcome the presumption; therefore, Petitioner is not entitled to habeas relief on the claim.

### B.        Denigrating the defense

Petitioner also complains that the prosecutor in closing argument described Petitioner's testimony as a "wild, fantastic yarn" (Trial Tr. V, ECF No. 13-16, PageID.1438) and defense counsel's argument that repeated Petitioner's story as a "yarn" (*Id.*, PageID.1484).    Merriam Webster defines a yarn as "a narrative of adventures."  *See* https://www.merriam-webster.com/dictionary/yarn (visited August 24, 2020).  Collins Dictionary presents a slightly less favorable definition: "a tale or story, especially one that seems exaggerated or hard to believe."        *See* https://www.collinsdictionary.com/us/dictionary/english/yarn  (visited August 24, 2020).    Essentially, the prosecutor was calling Petitioner a liar and when counsel repeated the story, it was no less a lie.    Petitioner's counsel, on the other hand, just came right out and said that Jackson, Waupoose, and "everyone else" lied.  (Trial Tr. V, ECF No. 13-16, PageID.1475-1479).

As noted above, even though a prosecutor may not denigrate the defense or defense counsel, a prosecutor is free to argue from the evidence that certain defense witnesses are lying. *See Hanna*, 245 F. App'x at 545-46; *Bates*, 457 F.3d at 525. That is what happened here—on both sides. Reviewing the prosecutor's argument in its entirety, it is obvious that the prosecutor contends that Petitioner fabricated the fake robbery story and, indeed, altered the story as necessary as Petitioner sought out and became aware of more facts. The surveillance video showed an armed robbery. Petitioner's defense rested entirely on the credibility of his claim that the robbery was staged. The prosecutor did not walk up to the podium, call Petitioner a liar, and walk away; the prosecutor reviewed the evidence in the record to support the inference that Petitioner's version of the events was not credible.

Under these circumstances, Petitioner has failed to show that the court of appeals' rejection of his "denigration of the defense" prosecutorial misconduct claim is contrary to, or an unreasonable application of, clearly established federal law. Therefore, Petitioner is not entitled to habeas relief on the claim.

### C.    Sufficiency of the evidence

Petitioner's rambling argument suggests that the evidence against him was not sufficient to support the guilty verdicts. The court of appeals rejected the argument:

> As this Court has recently explained:
>
> > In determining whether the prosecutor has presented sufficient evidence to sustain a conviction, an appellate court is required to take the evidence in the light most favorable to the prosecutor. The question on appeal is whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt. All

40

conflicts in the evidence must be resolved in favor of the prosecution and we will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses.[5]

Fish does not contest any particular element or elements of the crimes of which he was convicted. Rather, he asserts a general challenge: that various witnesses who testified to Fish's criminal acts were not credible. Thus, he contends there was "insufficient credible evidence" to support his convictions. It is well-established in Michigan law that credibility determinations "are made by the jury which heard the testimony and observed the witnesses, and an appellate court will not substitute its judgment for that of the jury."[6] The testimony of numerous witnesses supported Fish's convictions. The jury clearly found this testimony credible, and this Court will not interfere with the jury's credibility determinations. Fish's argument lacks merit.

[5] *People v Bosca*, 310 Mich App 1, 16-17; 871 NW2d 307 (2015) (quotation marks, brackets, and citations omitted).

[6] *People v Whalen*, 129 Mich App 732, 745; 342 NW2d 917 (1984). *See also People v Mardlin*, 487 Mich 609, 626; 790 NW2d 607 (2010) ("The jury is the sole judge of the facts; its role includes listening to testimony, weighing evidence, and making credibility determinations."); *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998) ("It is the province of the jury to determine questions of fact and assess the credibility of witnesses."); *People v Noble*, 238 Mich App 647, 657; 608 NW2d 123 (1999) ("This Court does not interfere with a jury's credibility determinations.").

(Mich. Ct. App. Op., ECF No. 13-20, PageID.1670-1671).

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is

41

required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA."  *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).  This standard erects " 'a nearly insurmountable hurdle' " for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds.  *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).  The standard applied by the Michigan Court of Appeals is functionally identical to the *Jackson* standard.

If, as Petitioner claims, it was the intent of Waupoose, Heiser, Jackson, and Fish to stage an event in such a way that video surveillance equipment would make it appear to be an armed robbery, the video evidence alone, considered in a light that favors the prosecution, would likely suffice to support the guilty verdicts.  Where Waupoose, Heiser, and Jackson testify that the event was an armed robbery the evidence becomes overwhelming.  For Petitioner's sufficiency challenge to succeed,

the Court would not only have to delve into the credibility of witnesses, it would also have to resolve the credibility questions in Petitioner's favor by viewing the evidence in a light that favors him. *Jackson* and *Herrera* prohibit such an exercise on habeas review.

Petitioner has failed to show that the Michigan Court of Appeals' rejection of his sufficiency challenge is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to habeas relief on his claim.

### D.    Irrelevant evidence

Petitioner's claim that the trial court admitted irrelevant evidence appears to be directed at the Rule 404(b) evidence relating to the Wisconsin robbery. (Pet'r's Memo., ECF No. 1-1, PageID.63). The Michigan Court of Appeals concluded that the Wisconsin robbery evidence was properly admitted under 404(b). (Mich. Ct. App. Op., ECF No. 13-20, PageID.1671-1672).

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." 502 U.S. at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to

be ranked as fundamental.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  This approach accords the state courts wide latitude in ruling on evidentiary matters.  *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently.  The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts.  *Sanders*, 221 F.3d at 860.  Petitioner has not met this difficult standard.

There is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of other bad acts evidence.  In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process.  *Estelle*, 502 U.S. at 75.  The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime.  *Id.* at 75 n.5.  While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.  The Sixth Circuit has

44

found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512.

Because there was no constitutional violation in the admission of evidence (bad acts), the state court decision was "far from" an unreasonable determination of the facts in light of the evidence presented. *Clark v. O'Dea*, 257 F.3d 498, 502 (6th Cir. 2001); *see also Bugh l*, 329 F.3d at 512. Accordingly, Petitioner is not entitled to habeas relief on this claim.

## VII.    Ineffective assistance of counsel

Sprinkled liberally throughout Petitioner's other habeas issues are his claims that virtually every action his counsel took or failed to take during preparation for and conduct of Petitioner's trial rises to the level of constitutionally ineffective assistance. Petitioner plainly evidenced his dislike for counsel by his behavior on the stand. In fact, during closing argument, counsel acknowledged "[a]t times you might have realized that he's not my . . . fan." (Trial Tr. V, ECF No. 13-16, PageID.1466).

The crux of Petitioner's complaints about counsel is that counsel did not do a good enough job supporting Petitioner's version of events. Petitioner contends that counsel should have introduced all of the telephone records, subpoenaed all of the other "victims," put before the jury the four hours of surveillance video after the robbery to show what the "victims" were doing, and highlighted the prosecutor's presentation of perjured testimony. The Michigan Court of Appeals rejected these claims as meritless.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:   (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is

"whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Petitioner insists that, if you just look at the telephone records the right way, view the four-plus hours of surveillance video that followed the robbery, view the video recorded by the camera that the prosecutor falsely claimed was not working, get the truthful testimony from the witnesses that did not testify, and correct the transcript to excise the things that did not happen and include the things that did happen but are missing, he would have been found not guilty. But, Petitioner's favorable interpretation of the telephone records depends first on concluding that Petitioner was telling the truth regarding telephone numbers and other witnesses were not. Petitioner's insistence that the post-robbery surveillance video supports his claim is utter speculation, as is his claim that the camera that was not working is the one that would establish that he is telling the truth. The same is true for Petitioner's claim that the missing witnesses would have supported his claims. "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991) (footnote omitted); *see also Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) ("The salient point is that nobody knows what she would have said. Speculation cannot suffice to establish the requisite prejudice.").

47

Petitioner's claim that the robbery was staged was not easily proven. Petitioner cobbles together minutiae from the surveillance video that might raise suspicion and declares it to be irrefutable proof that his story is credible. Petitioner offered the complicated set of inferences that purportedly supported his claim to the jury through his narrative testimony. The jury rejected it, not because counsel's presentation fell short or because counsel missed the "smoking gun" that established Petitioner's position, but because the story is so far-fetched. Petitioner's contention that counsel was professionally unreasonable for failing to lead the jury further down the rabbit hole of Petitioner's story is not supported by the record. There is plainly a reasonable argument that counsel satisfied the doubly deferential standard here. Accordingly, Petitioner has failed to demonstrate that the state appellate court's rejection of his ineffective assistance claim is contrary to, or an unreasonable application of, *Strickland*. Accordingly, Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims.

## VIII.  Amendment and evidentiary hearing

Respondent, in responding to Petitioner's rambling arguments, attempted to list and thereby specifically limit the issues Petitioner had raised. In Petitioner's reply, to ensure that all of the arguments from his appeal briefs were considered, sought leave to amend his petition.

Under Rule 12 of the Rules Governing Section 2254 Cases, the Federal Rules of Civil Procedure are applicable to habeas petitions, to the extent that they are not consistent with the Rules Governing Section 2254 Cases. Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure permits as a matter of right the filing of an amended

pleading until 21 days after a responsive pleading is filed.  Here, Petitioner did not seek leave to amend his petition until after the answer, he is not entitled to amend his petition as a matter of right.

If the time for amending as a matter of right has passed, Federal Rule of Civil Procedure 15 provides that a party may amend its pleadings by leave of court and that "leave [to amend] shall be freely given when justice so requires."  FED. R. CIV. P. 15(a).  In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court identified some circumstances in which "justice" might counsel against granting leave to amend: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id* at 182.  If a claim would be properly dismissed, amendment to add the claim would be futile.  *Thiokol Corp. v. Mich. Dep't of Treasury*, 987 F.2d 376, 383 (6th Cir. 1993).

Petitioner indicates that he wants to amend his petition to ensure that all issues raised in his state court appeal are included.  Such an amendment is unnecessary.  Petitioner specifically referred the Court to his appellate briefs in his petition and supporting memorandum.  To the extent one of his appeal arguments fits within the issues he described in his petition, the Court has addressed it. Accordingly, amendment to include those issues is unnecessary and his motion is properly denied.

In his reply brief, Petitioner requested an evidentiary hearing.  In an order issued on December 30, 2019, the Court denied the request, but indicated that, should such review been deemed necessary on plenary review, the matter would be set for hearing, without need for a formal request.  (ECF No. 29.)  As the Court noted in that order, habeas corpus actions generally are determined on the basis of the record made in the state court.  *See* Rule 8, Rules Governing § 2254 Cases.  An evidentiary hearing in the district court is not mandatory unless one of the circumstances listed in 28 U.S.C. § 2254(e)(2) is present.  *See Sanders v. Freeman*, 221 F.3d 846, 852 (6th Cir. 2000).  Having conducted a plenary review of the state record, the undersigned concludes that the record and state-court findings are adequate under § 2254(e).

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional

claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I recommend that Petitioner's requests to amend his petition and for an evidentiary hearing be denied. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated:  August 24, 2020                    /s/ Phillip J. Green
                                           PHILLIP J. GREEN
                                           United States Magistrate Judge

## NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).